UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20778-CR-JORDAN



UNITED STATES OF AMERICA,

vs.

KENT FRANK,

Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States of America, by and through the undersigned Assistant United States Attorney, files this response to the defendant Kent Frank's Motion to Suppress Evidence.

Defendant's motion hinges on the incorrect and factually unsubstantiated allegation that United States officials ordered, requested, or otherwise participated in the arrest of the defendant and the search of his hotel room by Cambodian Police on January 1, 2004, which resulted in the seizure of, among other things, his camera and computer (and all associated pictures and images)[1].

Contrary to defendant's claims, the United States did not in any way participate, have knowledge of, or otherwise take part in, directly or indirectly, the arrest of the defendant or search of his hotel room in Cambodia. Given the well settled and undisputed rule of law that Fourth Amendment rights and exclusionary rules are generally inapplicable to foreign searches and seizures, the defendant's motion to suppress should be denied. In support of this position, the United States offers the following factual and legal analysis of the case.

---

[1] While defendant does not specifically object to the other items in the room seized, such as the young girls' clothing, the pornographic CDs, etc., we will assume that the defendant is attempting to suppress these items as well.

I.    **Statement of the Facts.**

On January 2, 2004, Gary Phillips, Assistant Immigration and Customs Attache - Bangkok, learned from the Cambodian National Police (CNP) in Phnom Penh, Cambodia, that an American citizen, Kent Frank, had been arrested the day before at the Golden Bridge Hotel, in Phnom Penh, Cambodia, for sexual exploitation against children.  As further described in the Affidavit of Gary Phillips, attached hereto as Exhibit A, prior to January 2, 2004, neither Gary Phillips nor any other United States official, or United States agent had any knowledge that the defendant was in Cambodia, or that the defendant was being investigated by the CNP, or that the CNP had arrested the defendant, searched his hotel room, and seized evidence.

According to the CNP, on January 1, 2004, CNP officers received authorization from hotel personnel to examine a room at the Golden Bridge Hotel.  CNP officers, a Cambodian prosecutor, hotel personnel, as well as a representative from Agin Pour Les Femmes En Situation Precair (AFESIP) entered the room and found the defendant.[2]  The CNP also reported that four young girls were found on the hotel property.  The CNP stated that they searched the hotel room and seized the following items: camera, laptop computer, clothes (which included the defendant's' clothes as well as children's clothes), pornographic CDs, as well as other miscellaneous items.

On January 2, 2004, upon learning of the arrest and seizure, Assistant Attache Phillips and several persons from the United States embassy met with CNP Major May Seng.  Major May Seng confirmed the details of the search and stated that the evidence was scattered throughout th defendant's hotel room.

---

[2] *AFESIP is a private non-governmental organization, and is not an agent of the United States.*

On January 3, 2004, Assistant Attache Phillips visited the defendant, who was in Cambodian custody, and identified himself as a United States law enforcement agent. Assistant Attache Phillips asked the defendant to provide some biographical information, which he did. Assistant Attache Phillips also told the defendant that as an American citizen, the defendant was still entitled to the protections of his <u>Miranda</u> and civil rights and that they would not be violated.

**II.    Memorandum of Law.**

   A.    <u>Foreign Searches and Seizures</u>.

It is well established that evidence obtained by foreign police officers from searches carried out in their own countries is generally admissible in American courts regardless of whether the search complied with the Fourth Amendment, even if American officials were present and cooperated in some degree. <u>Birdsell v. United States</u>, 346, F.2d 775, 782 (5th Cir. 1965), <u>cert. denied</u>, 382 U.S. 963 (1965); <u>United States v. Janice</u>, 428 U.S. 433, 455, n.31 (1976); <u>United States v. Behety</u>, 32 F.3d 503, 510 (11th Cir. 1994).[3] This rule applies regardless of whether the persons arrested are American citizens. <u>United States v. Rosenthal</u>, 793 F.2d 1214, 1230 (11th Cir. 1986), <u>cert. denied</u>, 480 U.S. 919 (1987); <u>United States v. Morrow</u>, 537 F.2d 120, 139 (5th Cir. 1976); <u>Government of Canal Zone v. Sierra</u>, 594 F.2d 60 (5th Cir. 1979).

The Supreme Court has refused to extend the exclusionary rule to such searches because the "prime purpose of the exclusionary rule, if not its sole one, is to deter unlawful police conduct." <u>Janice</u>, 428 U.S. at 446. The exclusionary rule is not applicable as a useful deterrent when foreign

---

[3] The Eleventh Circuit is bound by Fifth Circuit decisions handed down prior to the close of business on September 30, 1981. <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

governments commit the act. Id. See also Rosenthal, 793 F.2d at 1230 (foreign police conduct will not be deterred by punitively excluding such evidence in American courts).

There are two rarely used exceptions to the general rule admitting evidence resulting from foreign searches and arrests, neither of which apply in the instant case. These exceptions include (1) where the foreign officials engage in actions that are so extreme that it "shocks the judicial conscience," and (2) where United Sates law enforcement officials substantially participated in the search, or the foreign officials conducting the search were actually acting as agents for their United States government (sometimes referred to as the "joint venture" doctrine). See Morrow, 537 F.2d at 139; Rosenthal, 793 F.2d at 1230-31; Behety, 32 F.3d at 510; Stonehill v. United States, 405 F.2d 738, 743 (9th Cir. 1968), cert. denied, 395 U.S. 960 (1969).

Neither of these exceptions apply in this case. The defendant has not alleged, nor do the facts suggest, that the Cambodian police engaged in conduct that "shocks the judicial conscience." As for the second exception, the United States did not have any knowledge of the defendant's existence in Cambodia at the time of his arrest. The United States only first found out about the defendant's arrest the day after everything had occurred. Therefore, under no theory could have the United States, through an agent or otherwise, substantially participated in the defendants' arrest or search of his hotel room. Since the defendant's arrest and search was conducted entirely by the Cambodian National Police, with any participation from the United States, in accordance with Janice, Birdsell, Rosenthal, and their progeny, the Fourth Amendment and the exclusionary rule is not applicable to this case and the defendant's motion should be denied.

B.  Defendant's Conclusory Allegations.

Defendant hopes to suppress the evidence taken from his hotel room on the conclusory

allegation that the defendant's arrest and detention was at the request of the United States government officials. In support of the defendant's claim, the defendant states that "*it is believed*" that ICE agents and/or Gary Phillips and/or agents from AFESIP worked with Cambodian National Police to arrest the defendant on January 1, 2004.

As stated above, and as set forth in the attached Affidavit, this allegation is completely false. Neither Gary Phillips, any other United States official, nor any agent of the United States had any involvement in, or knowledge of, the arrest and search. The CNP was conducting its own investigation, searched the room in accordance with its own laws, and seized evidence for a case that the their government prosecuted. The United States was notified only after the arrest and search was planned and completed.

Even assuming, <u>arguendo</u>, that the investigation and arrest of the defendant was done at the behest of the United States government as defendant claims, which it cannot be made clear enough that it was not, under Eleventh Circuit case law, the exclusionary rule would still not apply absent extraordinarily extreme circumstances, which do not exist even under the defendant's theories. In order for the evidence to be excluded, United States officials, or their agents, must have substantially participated in the search. <u>Morrow</u>, 537 F.2d at 139; <u>Rosenthal</u>, 793 F.2d at 1230-31; <u>Behety</u>, 32 F.3d at 510; <u>Stonehill v. United States</u>, 405 F.2d 738, 743 (9th Cir. 1968), <u>cert. denied</u>, 395 U.S. 960 (1969). The few courts that have analyzed how much participation is "substantial participation" have not been unanimous in the precise test to be used. <u>Morrow</u>, 537 F.2d at 104. The Eleventh Circuit has, however, been consistent in <u>not</u> finding substantial participation and, as noted in a recent district court decision, has set a high threshold for finding that such participation exists. <u>United States v. Angulo-Hurtado</u>, 165 F.Supp.2d 1363, 1371 (N.D. Georgia 2001).

5

For instance, in Rosenthal, a case involving a raid of a defendant's residence in Colombia, the Eleventh Circuit did not find substantial participation or a joint venture where United States agents helped plan the raid, were present during the raid and arrest, and received all of the evidence obtained during the raid for use in the defendant's prosecution in the United States. 793 F.2d at 1231. Likewise, in Sierra, United States officials specifically requested that the Panamanian authorities search the defendant's house while United States officials questioned the defendant. The Eleventh Circuit still did not find that there was substantial participation even though U.S. officials were present during the search, U.S. officials received all of the evidence, and there was no evidence that the Panamanians ever obtained a warrant for the search under the laws of their own country. 594 F.2d at 64, 71. In reaching its decision, the court in Sierra cited Birdsell's holding that Fourth Amendment rights are generally inapplicable even though American officials are present and cooperate in some degree, and stated that there was no evidence that United States officers could have stopped the Panamanian police even if they thought the Panamanians were doing something wrong. Id. at 72. See also Morrow, 537 F.2d at 140 (FBI tip to Canadian authorities of a United States citizen in Canada dealing in counterfeit securities insufficient to trigger Fourth Amendment protections even though all evidence was turned over to FBI for prosecution in United States); Behety, 32 F.3d at 510-511 (no joint venture or Fourth Amendment violation when DEA informed Guatemalans that a vessel with cocaine was coming to their country from Florida, DEA agents were present during the search, and the defendant and evidence were sent to Miami for prosecution); Angulo-Hurtado, 165 F.Supp.2d at 1371 (no violation of the Fourth Amendment and no substantial participation by United States officials where application for United States wiretap was based on information obtain from an illegal Colombian wiretap, even though the affidavit for the wiretap

stated that the investigation was "in conjunction with" the Colombians).

The Eleventh Circuit is not alone in setting an extremely high bar for substantial participation. Even in Stonehill, a Ninth Circuit case that first set forth the concept of "joint venture," the Court, while analyzing a raid conducted in the Phillippines, refused to find that a joint venture existed when United States officials were present during the planning of a raid, were present during the raid itself, and obtained all of the evidence from the raid the next day. The fact that the Supreme Court of the Phillippines ultimately found the raid to be illegal, and that the raid would also have been found to be illegal in the United States did not change the Ninth Circuit's mind. 405 F.2d at 743-745. See also United States v. Staino, 690 F. Supp. 406 (E.D. Pa. 1900), aff'd, 888 F.2d 1282 (3d Cir. 1989)(a joint venture did not exist when United States officials helped foreign officials locate the defendant but were not included in the actual search or allowed to carry weapons); United States v. Mitro, 880 F.2d 1480 (1st Cir. 1989) (no joint venture when DEA affidavit to search was based on information from illegal Colombian wiretap).[4]

Defendant's allegations, even taken as true, do not come close to stepping outside the bounds of permissible participation outlined above. Defendant concedes that he was arrested by the Cambodian officials who were acting under Cambodian law. Def. Mot. at 5. It is not disputed that United States officials were not present during the search or arrest. Defendant's basis for his motion is that he "*believes*" the United States agents and the Cambodian National Police were acting in concert. Def. Mot. at 2. A self-serving "belief" of some type of coordination does not constitute

---

[4]But see United States v. Hensel, 699 F.2d 18 (1st Cir. 1983) (court did not disturb district court's finding that a joint venture existed when U.S. authorities urged Canadian authorities to seize a shrimping vessel and provided back up assistance and firepower, but called it a "close call"; court found that the Fourth Amendment was not violated for other reasons and did not apply exclusionary rule).

*substantial participation*. Even assuming that United States authorities tipped off the Cambodians, requested that the defendant's room be searched, and were present during that search, the Eleventh Circuit, following Sierra, Rosenthal, Behety, and Birdsell would not find a violation. That the Cambodian National Police may have conducted the search without a warrant, as the defendant alleges, has no bearing on whether United States authorities substantially participated.[5] Sierra, 594 F.2d at 64; Stonehill, 405 F.2d at 743. A discussion regarding substantial participation is purely academic, however, since the United States had absolutely no participation whatsoever in the defendant's arrest or the search of his hotel room.

---

[5] *A Cambodian prosecutor was in fact present during the search and authorized the search.*

### III. Conclusion.

The United States did not in any way participate in, have knowledge of, or otherwise take part in, directly or indirectly, the arrest of the defendant or search of his hotel room in Cambodia. Therefore, in accordance with well-settled Eleventh Circuit and Supreme Court case law, with which the defendant is in full agreement, the United States respectfully requests that defendant's motion be denied.

          Respectfully submitted,

          R. ALEXANDER ACOSTA
          UNITED STATES ATTORNEY

By: _____
    JONATHAN E. LOPEZ
    ASSISTANT UNITED STATES ATTORNEY
    Court I.D. No. A5500750
    99 N.E. 4th Street
    Miami, Florida 33132
    Tel: (305) 961-9377
    Fax: (305) 530-7976

By: _____
    WENDY WALDRON
    Trial Attorney, U.S. Department of Justice
    1400 New York Ave. N.W.
    Washington, D.C. 20005
    Telephone: (202) 514-5780
    Facsimile: (202) 514-1793

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was delivered by facsimile and United States mail this ____ day of November, 2005, to:

James S. Benjamin
One Financial Plaza, Suite 1615
Ft. Lauderdale, FL 33394
Fax: 954-779-1771

Jonathan Lopez
Assistant United States Attorney

# GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

## EXHIBIT A

## AFFIDAVIT

I, Gary J. Phillips, being duly sworn, depose and state as follows:

1. I am an Assistant ICE Attache ("AIA") with the Bureau of Immigration and Customs Enforcement. I am currently assigned to a post in Bangkok, Thailand, and am the Operation Supervisor for Supervisory Special Agents and Foreign Service Nationals in Southeast Asia with respect to criminal investigations occurring within host countries (Thailand, Burma, Vietnam, Laos and Cambodia) in which American citizens are involved or which involve American interests. I have held this position since May 2002. I have participated in the United States investigation and indictment of Kent FRANK.

2. This affidavit is based upon information I have learned from members of the Cambodian National Police, Agir Pour Les Femmes En Situation Precair (AFESIP), as well as from special agents and foreign nationals working on behalf of the United States.

3. On January 2, 2004, the Cambodian National Police (CNP) informed United States Embassy Personnel in Cambodia that an American citizen, identified as Kent FRANK, was arrested in Phnom Penh, Cambodia for sexual exploitation against children. The CNP alleged that FRANK sexually abused four Vietnamese girls aged 12-15 years. This information was immediately relayed to me.

4. After learning of FRANK, I, as well as other members of my United States law enforcement team, met with CNP Major Meng Say. Major Say informed me that on January 1, 2004, his team received authorization from the hotel manager to examine a certain hotel room at the Golden Bridge Hotel based on confidential information he had received. He further informed me that he, a Cambodian prosecutor that authorized the search, a representative from AFESIP, hotel personnel, as well as other CNP officers

1

entered the room and confronted FRANK.

5. Major Say stated that during the search they observed and seized several suspicious items in the hotel room, including a camera, laptop computer, clothes (FRANKS' clothes and children's clothes), pornographic CD's, as well as other miscellaneous items. Major Say further stated that at the conclusion of the search, CNP officers detained FRANK as well as four Vietnamese girls who were located on the hotel property. Major Say also reported that upon his arrest, FRANK attempted to bribe him with a $100 bill. I told Major Say that the $100 bill should be saved as evidence. I later learned that the $100 bill was used to pay for food and other items for FRANK while he was in Cambodian custody.

6. In response to this information, on January 3, 2004, I, as well as other members of United States law enforcement, went to the local police station where FRANK was detained and identified ourselves to FRANK. We informed him that we were representatives from the U.S. Embassy and that I was a U.S. law enforcement agent. I asked FRANK to provide biographical information, which he complied. I also told FRANK that as an American citizen and he was still entitled to the protections of his <u>Miranda</u> and civil rights and that they would not be violated.

7. At no time prior to January 2, 2004, did I, nor any other member of my team have any knowledge of FRANK or the Cambodian search and arrest of Frank.

8. No United States official requested, ordered, authorized, participated or had any knowledge of FRANK's arrest or the Cambodian search and seizure.

9. I did not observe FRANK at a water park on January 1, 2004, nor was I at a water park on January 1, 2004.

10. To the best of my knowledge, no United States representative or person working on behalf of the United States observed FRANK at a water park on January 1, 2004.

11. To the best of my knowledge, any and all United States involvement in the FRANK investigation, by United States officials, or persons working on behalf of the United States, began on January 2, 2004.

12. AFESIP is not a United States agency, and its employees are not representatives of the United States, nor do they work on behalf of the United States.

FURTHER AFFIANT SAYETH NAUGHT.

11/24/2005

Gary J. Phillips
Assistant ICE Attache

Kingdom of Thailand  
Bangkok Metropolis  } SS
Embassy of the United States
of American

Subscribed to and sworn before me this ___ day of 21 NOV 2005.

Guy Michael Lawson
Vice Consul of the
United States of America

**Indefinite**

3