UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  04-20778-CR-JORDAN

NIGHT BOX
RECEIVED

AUG 1 8 2006

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA,

vs.

KENT FRANK,

    Defendant.

_____ /

## UNITED STATES' MOTION IN LIMINE TO
## ADMIT IMAGES AND TESTIMONY

The United States of America, by and through R. Alexander Acosta, United States Attorney

for the Southern District of Florida, Eric Morales, Assistant United States Attorney, and Wendy

Waldron, Trial Attorney for the United States Department of Justice, respectfully submits this

motion to admit in evidence the images contained on the micro drives of the Defendant's camera and

testimony regarding the Defendant's alleged sexual exploitation of several minors in 2002.  The

entire contents of the micro drives are admissible because they are (a) intrinsic to the charged

offenses, and (b) in the alternative, under Fed. R. Evid. 404(b) to prove the Defendant's intent,

knowledge, plan, identity, and modus operandi.  Evidence that the Defendant paid "Minor E" and

other minors to engage in sexual activity in Cambodia in 2002, and offered money to marry Minor

E's younger sister in 2004, is admissible (a) under Fed.R.Evid. 413 for any purpose, and (b) under

Fed.R.Evid. 404(b) to prove the Defendant's intent, knowledge, plan, identity, and modus operandi.

## I.    INTRODUCTION

The Defendant, Kent Frank, is charged in a ten count superceding Indictment with various

offenses related to his alleged sexual exploitation of multiple minors during two trips to Cambodia



offenses related to his alleged sexual exploitation of multiple minors during two trips to Cambodia in 2003. The first trip occurred between approximately September and October 2003. The Defendant left for his last trip to Cambodia in late November 2003 and did not return until he was brought back in connection with these offenses in late 2004.

The Defendant is charged with violations of Title 18, United States Code, Sections 2423(c), 2251A , and 2423(b). Count One of the Indictment charges that from on or about September 16, 2003 to on or about October 9, 2003, the Defendant traveled in foreign commerce, from the United States to Cambodia, and engaged in illicit sexual conduct, as defined in 18 U.S.C. § 2423(f), with Minor A, in violation of 18 U.S.C. § 2423(c). Counts Two through Five of the Indictment charge violations of Section 2423(c) related to the Defendant's last trip to Cambodia, from on or about November 23, 2003 to on or about January 1, 2004, where he engaged in illicit sexual conduct with Minor A, Minor B, Minor C and Minor D, respectively.

Count Ten of the Indictment is not tied to alleged sexual activity with any particular minor, but concerns whether the Defendant intended to engage in illicit sexual conduct with minors at the time that he commenced his travel to Asia in November 2003. Count Ten charges that from on or about November 18, 2003 to on or about November 25, 2003, the Defendant traveled in interstate and foreign commerce for the purpose of engaging in illicit sexual conduct, as defined in 18 U.S.C. § 2423(f), in violation of 18 U.S.C. § 2423(b).

The definition of "illicit sexual conduct" in Section 2423(f) incorporates various provisions found elsewhere in the federal code. Where non-commercial sex is involved, Section 2423(f)(1) defines "illicit sexual conduct" to include a sexual act that would be punishable under Chapter 109A, 18 U.S.C. §§ 2241-2248, if the sexual act occurred in the special maritime and territorial jurisdiction

2

of the United States.  "Illicit sexual conduct" is defined in Section 2423(f)(2) as a commercial sex act (as defined in 18 U.S.C. § 1591) with a person under 18 years of age.

Counts Six through Nine of the Indictment concern the Defendant's alleged production of child pornography while abroad.  Counts Six through Nine charge violations of 18 U.S.C. § 2251A(b)(2)(A), which provides, in relevant part, that "[w]hoever purchases or otherwise obtains custody or control of a minor ... with intent to promote ... the engaging in of sexually explicit conduct by such minor for the purpose of producing any visual depiction of such conduct" shall be punishable under the statute.  A minor is defined in 18 U.S.C. § 2256(1) as being "any person under the age of eighteen years."  Count Six charges a violation of Section 2251A(b)(2)(A) on or about September 24, 2003 and involves Minor A.  Counts Seven through Nine charge violations of Section 2251A(b)(2)(A) on or about December 31, 2003 and involve Minor B, Minor C and Minor D, respectively.

### A.    The Micro Drive Evidence

The two micro drives were seized from the Defendant's hotel room by Cambodian police on January 1, 2004.  The drives are the memory storage devices for the Defendant's camera and were found inside the camera bag.  The two drives generally contain images taken between September 21, 2003 and January 1, 2004.

The micro drives contain hundreds of images of young women and girls naked and in graphic, sexually explicit poses.  These include graphic sexual images of the four minors listed in the Indictment.  Dr. Walter Lambert, Associate Professor of Clinical Pediatrics at the University of Miami School of Medicine, has examined these images and concluded that Minor A, Minor B, Minor C and Minor D are under the age of sixteen.  Dr. Lambert has also concluded that the micro

3

drives contain pictures of nine additional minors who are below the age of eighteen.[1]

Some of the images on the drives are tourist photographs that appear to have been taken during the Defendant's trips to Cambodia, Vietnam, Thailand and Costa Rica during the time period alleged in the Indictment. The Defendant appears in several of these photographs. As discussed below, the tourist images are primarily relevant to give a full picture of the Defendant's activities while traveling during this time period and to show that the Defendant was responsible for and aware of the images contained on the micro drives. The tourist images also include non-pornographic pictures of young women and girls, including a series of images of two young girls at a playground during the time that the Defendant was in Costa Rica, several images of a young girl on a beach, and images of several girls or young women posing with the Defendant and other Westerners during the time that the Defendant was in Vietnam, during his last trip to Southeast Asia.

The micro drives contain over a hundred images of the four minors listed in the Indictment; without question, these images are admissible. Images of unidentified females, both minors and young women with adult features, are also admissible as intrinsic evidence and under Rule 404(b). Because a detailed understanding of the contents of the micro drives demonstrates the intrinsic nature of this evidence and its relevance to the charged offenses, this evidence is further described as follows.

The micro drive forensically labeled as micro drive two ("MD2") generally contains the earliest images, with a date range between September 21, 2003 and January 1, 2004. Every single one of the more than five-hundred-forty images on MD2 depicts a young woman or girl. Almost all of the young women and girls depicted are in a series of images that involves naked and often

_____

[1] Dr. Lambert's report and curriculum vitae have been provided to Defense Counsel.

graphic sexually explicit poses.

The first series of images on MD2 was taken on September 21 and September 22, 2003, which was within a day of the Defendant's arrival in Cambodia. This series contains almost two dozen images of two minors naked in a bathtub and posing lasciviously on a bed. Dr. Lambert has concluded that both females depicted are under the age of sixteen. The next series includes approximately one hundred images taken on September 23, 2003, depicting two females posing both clothed and naked. Dr. Lambert has concluded that one of the females in this series is under the age of sixteen and the other has adult features.

The next series of images on MD2 was taken on September 24, 2003 and includes pictures of the Defendant engaged in sex acts with Minor A. This series contains almost a hundred images of three girls including Minor A and Minor B posing naked and in graphic, sexually explicit poses. Dr. Lambert has concluded that all three of these females are under the age of sixteen. Also included in this series are nine images of the Defendant engaging in a sex act with Minor A while touching and kissing Minor B.

The next group of approximately fifty images was taken on September 29, 2003, and shows two young girls taking off their clothes and then posing naked in graphic sexual poses. Dr. Lambert has concluded that both of these girls are under sixteen. MD2 also contains forensically-recovered images of a girl taken on October 1, 2003 in naked, sexually explicit poses. Dr. Lambert has concluded that the girl in these images is under eighteen.

The room in which these pictures were taken appears to be the same room where the Defendant was arrested in January 2004.

A second series of approximately eighty images of Minor A and Minor B was forensically

recovered from MD2.  The images are dated October 3, 2003 and show Minor A and Minor B posing

naked and in graphic sexual poses on a bed.  An H.I.V. test that appears to match a test recovered

from the Defendant's hotel room in Phnom Penh in January 2004 is visible in many of the images

in this series.

MD2 also contains a series dated October 5, 2003, showing a young woman or girl posing

naked in the same room as the October 1, 2003 images.  There is also a series of images dated

October 6, 2003 and October 8, 2003, showing two young women or girls posing in clothing.

The next series of approximately forty-one images on MD2 was forensically recovered and

is dated October 8, 2003.  This series shows a young girl posing naked and in graphic, sexually

explicit poses against the same backdrop as the series of the two minors dated September 29, 2003.

Dr. Lambert has concluded that the girl depicted in the October 8, 2003 series is below the age of

sixteen.[2]

The images contained on MD2 then jump to January 1, 2004, and show all four minors listed

in the indictment at a water park.  When interviewed by Cambodian police on January 1, 2004, the

Defendant told them that he had taken the four girls to a water park in Phnom Penh.  This series also

contains images of Minor B and Minor D posing naked in the Defendant's hotel room on January

1, 2004.

The contents of micro drive one ("MD1") are more varied than those of MD2, and contain

numerous tourist pictures as well as sexually explicit images, from the time frame just prior to and

including the Defendant's last trip to Cambodia.  The first series consists of over two hundred

_____

[2]  The Government also expects to present testimony from a law enforcement witness
who met this minor in Cambodia.

images taken on a beach on October 26, 2003, primarily of young women and girls. There are also nineteen images of two girls on a playground, taken on the same day. These images appear to have been taken in Costa Rica, which is where the Defendant's passport and other evidence proves he was on October 26, 2003.

The next several series of images were taken between November 24, 2003, and December 3, 2003, in Thailand and Vietnam, which is where the Defendant was during this time period.[3] The first series was taken on November 24, 2003, within a day of the Defendant's arrival in Southeast Asia. This series depicts a young woman who Doctor Lambert has concluded has adult features posing naked and in sexually explicit positions on a bed with a partially-unpacked suitcase in the background. MD1 also contains images of two young women or girls in a hotel room taken on November 26, 2003.

The next group of images was taken in Vietnam, between November 27, 2003 and December 3, 2003. The Defendant's passport and other records show that he was in Vietnam during this period. The images taken in Vietnam include pictures of the Defendant and other Westerners visiting tourist sites with young girls or women, and posing on a couch with their hands on the legs of young girls or women. This series also includes numerous images taken on December 2, 2003, showing a girl posed naked on a bed with what appears to be ejaculate on her back. Dr. Lambert has concluded that the girl in these images is under eighteen. Images taken on December 3, 2003 show the Defendant.

MD1 also contains approximately seventeen images of Minor D taken on December 7, 2003, in graphic and sexually explicit poses. MD1 also contains over forty images that were taken on

_____

[3] The Vietnam images include famous Vietnamese landmarks.

December 25, 2003, showing Minor C in graphic, sexually explicit poses.  The latest date of images

contained on MD1 is December 31, 2003.  This series contains approximately ninety-seven images

of Minor C and Minor D getting undressed and posing naked.

**B.      The Testimony of Minor E**

The Government is seeking to offer the testimony of a young woman, "Minor E", about

alleged prior acts of sexual exploitation by the Defendant.[4]   Minor E will testify that in

approximately 2002, the Defendant came to a brothel outside Phnom Penh approximately five times

and paid to engage in sex acts with her and several other minors.  Minor E will testify that she told

the Defendant she was fourteen years old and that she heard the other girls say that they were also

under eighteen.  Minor E will also testify that the Defendant brought a camera with him and asked

to take pictures of the sexual activity.

Minor E will testify about an incident that occurred in approximately 2004, after the charged

offenses but before the Defendant left Cambodia.  By that time, Minor E had married an American

who was friends with the Defendant.   According to Minor E, the Defendant came to visit her

husband on several occasions and on one occasion offered money to marry Minor E's younger sister,

who was about fourteen years old at that time.

**II.      ARGUMENT**

**A.      The Micro Drive Images are Intrinsic Evidence of the Charged Offenses**

The photographs on the micro drives should be admitted as evidence intrinsic to the charged

offenses.  Intrinsic evidence includes evidence of criminal activity other than the charged offense that

---

[4] Minor E testified in a deposition in Miami pursuant to Fed.R.Crim.P. 15 on June 30,
2006.  The deposition was attended by the Defendant and counsel, who therefore have ample
notice of the other acts evidence offered by the Government through the testimony of Minor E.

is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998) (permitting detailed evidence about defendant's earlier, uncharged participation in a drug-dealing operation in trial for drug distribution conspiracy, finding that the evidence was "inextricably intertwined" because it was "vital to the understanding of the context of the government's case").

When determining whether other act evidence is intrinsic, the Eleventh Circuit places significant weight on the proximity of those acts to the charged crime. For example, in United States v. Cox, No. 05-14859, 2006 WL 1876666 (11th Cir. July 7, 2006) (unpublished), a defendant charged with knowing possession of a firearm by a felon objected to the admission of uncharged drugs found in the same room as the firearm. The court in  Cox noted the "well-established correlation between drugs and firearms" and relied on the temporal and physical proximity of the drugs and firearms to find that the drug evidence was "relevant intrinsic evidence from which the jury could infer that [the defendant]  *knowingly* possessed the firearm." Id. at *5 (emphasis in original). The treatment of intrinsic evidence was even broader in  United States v. Thomas, 242 F.3d 1028, 1032 (11 th Cir. 2001), in which the court determined that evidence of a prior drug transaction was intrinsic and admissible to prove a defendant's knowing possession of firearms found in his residence, even though no drugs were found during the search that uncovered the firearms. The court in Thomas found that the "evidence of the drug trafficking was in sufficiently close proximity, temporally and physically, to be relevant to proving that he knowingly possessed the weapons" and noted that acts committed as part of a single criminal episode do not become "other acts" subject to the restrictions of Rule 404(b) "merely because the defendant is not indicted

for all of his actions." <u>Id</u>. at 1032-33.

As highlighted by the decisions in <u>Cox</u> and <u>Thomas</u>, evidence can be considered intrinsic when it is used to show knowledge or intent for a charged crime. In the instant case, all of the evidence contained on the micro drives is in close physical and temporal proximity to the images of the known victims and is relevant to prove the intent necessary for conviction on the charged offenses. The micro drive evidence is inextricably intertwined, as the images of additional minors are interspersed with images of the known victims and occurred during the same trips to Asia. In total, the micro drives contain sexually explicit images of thirteen different minors, including the four minors listed in the Indictment. These images are intrinsic evidence of the charged offenses, since they demonstrate the Defendant's intent at the time of travel in November, 2003, and his intent to create sexually explicit images of minors.

The full admission of the micro drives also shows that the Defendant controlled and was aware of their contents, including the images of the minors listed in the Indictment. The images show locations that match other evidence of the Defendant's travel during this period, including his passport and credit card records. Images of the minors listed in the Indictment and images of other minors also share common backgrounds, such as hotel rooms, and were taken in close sequence. When considered as a whole, this evidence makes it extremely unlikely that a person other than the Defendant had control over the camera and micro drives or was responsible for the images of the known victims. The full contents of the micro drives provide direct evidence of the charged offenses.

Finally, the admission of the micro drives in their entirety is necessary to tell the complete story of the crimes with which the Defendant is charged. The images of girls and young women, in

10

both their content and numerosity, show that engaging in sexual activity and creating sexually explicit images was central to the Defendant's travel.  On MD2, for example, the sexually-explicit images of minors begin within a day of the Defendant's arrival in Cambodia and occur every few days.  This includes pictures of the Defendant and images of the minors listed in the Indictment posing naked and in sexually explicit positions on September 24, 2003, October 3, 2003, and January 1, 2004.  The sexually explicit images taken of another minor on October 8, 2003, were within a day of the Defendant's departure from Cambodia.  Limiting the admission of images to the known minors would give an unrealistic context for these offenses, creating the false impression that the Defendant's interactions with the known minors were isolated events.  The images of the unidentified females are also "linked in time and circumstances," with the events underlying the charged offenses, and time stamps on these images show that these acts occurred routinely.

The images contained on MD1 show that almost immediately upon the Defendant's return to Southeast Asia he took sexually explicit images of a young woman, on November 24, 2003.  He then went to Vietnam and took sexually explicit images of a minor on December 2, 2003.  Scenic pictures of Vietnam are then followed by numerous sexually explicit images of the minors listed in the Indictment, including pictures taken on December 7, 2003, December 25, 2003, and December 31, 2003. The admission of these images in their entirety is necessary to permit the presentation of a coherent story regarding the charged crimes.

**B.**     **Evidence that the Defendant Exploited Other Minors is Admissible as Other Acts Evidence**

Although the images offered are properly admissible as intrinsic evidence of the offense, the images and the testimony of Minor E are also admissible under Rule 404(b) to show the Defendant's

intent, knowledge, plan, identity and modus operandi.  Any prejudice the Defendant may suffer by the admission of this evidence does not substantially outweigh the high probative value of the evidence.

The Eleventh Circuit applies a three-part test in evaluating evidence under Rule 404(b).  For extrinsic evidence to be admissible, the district court must determine that "(1) the evidence in question is relevant to an issue other than the defendant's character, (2) the evidence is sufficient for a jury to find the defendant committed the extrinsic act, and (3) the [evidence's]... probative value is not substantially outweighed by its undue prejudice." United States v. LeCroy, 441 F.3d 914, 926 (11th Cir. 2006).  If the three prongs of this test are met, the evidence should be admitted.  See United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) ("Rule 404(b) is a rule of inclusion, and... accordingly '404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case.'").  This Rule applies to relevant "other acts," whether they occurred before or after the charged offense.  Jernigan, 341 F.3d at 1283 ("[W]e note that the standard for evaluating the admissibility of a subsequent bad act under Rule 404(b) is identical to that for determining whether a prior bad act should be admitted under this Rule").  The evidence offered fulfills the criteria set forth by Rule 404(b) and should thus be admitted.

1. The Evidence Is Relevant to Non-character Issues

The full contents of the micro drives and the testimony of Minor E are offered by the Government not to demonstrate the Defendant's bad character, but to prove his intent, knowledge, plan, identity and modus operandi relevant to the charged offenses.

(i). Intent, Knowledge and Plan

Other acts evidence is regularly admitted to prove that a defendant possessed the requisite

12

intent for charged offenses. As the Supreme Court has noted, 404(b) evidence may be critical to establishing a disputed issue, "especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Huddleston v. United States, 485 U.S. 681, 685 (1988). The Eleventh Circuit has similarly recognized the high probative value of other acts evidence where intent and knowledge are at issue, noting that "where the issue is defendant's mental state the balance tips toward admissibility." United States v. Robinson, 687 F.2d 361 (11th Cir. 1982). See also LeCroy, 441 F.3d at 926 (holding that, in a prosecution for robbery, rape and murder, the Government could prove the defendant's murderous intent by introducing notes the defendant had written ten years prior expressing his desire to "rape, rob, and pillage" and "rob cars and kill people"); United States v. Holmes, 171 Fed.Appx. 753, 757 (11th Cir. 2006) (allowing evidence that defendant had previously robbed a bank to prove that he intended to rob the same bank two months later); United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) (admitting evidence of the defendant's prior conviction for gun possession in a prosecution for knowing possession of a firearm).

In the present case, the Government must prove the Defendant's intent in several aspects. Section 2423(b) requires proof that the Defendant traveled abroad for the purpose of engaging in illicit sexual conduct. Section 2251A(b)(2)(A) requires the Government to prove that the Defendant purchased or otherwise obtained custody or control of a minor with the intent to promote sexually explicit conduct by the minor for the purpose of producing a visual depiction of that conduct. Therefore, the Government must present evidence that reveals the Defendant's intent at two different times: (1) when he traveled in interstate and foreign commerce from on or about November 18, 2003 to November 25, 2003; and (2) when he purchased or otherwise obtained custody or control of Minor

13

A on or about September 24, 2003 and Minor B, Minor C and Minor D on or about December 31, 2003. Evidence of intent is also required for an attempt conviction for any of the charged offenses, including the alleged violations of Section 2423(c). Intent and knowledge are squarely at issue in this case.

The Eleventh Circuit has recognized the utility of other act evidence in proving a defendant's intent to specifically target children, rather than adults, for sexual activity. The defendant in United States v. Rojas, 145 Fed.Appx. 647, 649-50 (11th Cir. 2005) (unpublished), was charged under 18 U.S.C. §2422(b) with using a facility of interstate commerce to entice a minor to engage in criminal sexual activity, which requires proof that the defendant knew or believed that the individual enticed was under 18 years old. The Court of Appeals upheld the introduction of evidence that the defendant had previously used the internet to attempt to solicit another person who he believed was a minor girl, finding that the evidence as relevant to show the defendant's intent to engage in sexual activity with a minor. Id. at 650.

Similarly, in United States v. Breitweiser, 357 F.3d 1249 (11th Cir. 2004), the defendant was charged with abusive sexual contact with a fourteen-year-old, in violation of 18 U.S.C. § 2244(a)(3). The Eleventh Circuit held that evidence that the defendant had previously fondled two thirteen-year-old girls and had been seen masturbating near an unknown girl in a store several months after the date of the charged offense was admissible under Rule 404(b) to show motive, intent, knowledge, plan and preparation, and lack of mistake. Id. at 1254. See also United States v. Maxwell, 386 F.3d 1042, 1050 (11th Cir. 2004), vacated on other grounds, 126 S.Ct. 321 (2005) (evidence of internet activity and uncharged images of child pornography admissible to show defendant's knowledge and intent in child pornography prosecution).

14

Other circuits have also approved of the admission of other acts evidence under Rule 404(b) to show intent in child exploitation cases. For example, the defendant in United States v. Meachum, 115 F.3d 1488, 1490 (10th cir. 1997), was charged with transporting a minor in interstate commerce with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). The court in Meachum held that evidence that the defendant had molested his step-daughters more than thirty years prior to the charged offense was properly admitted under Rule 404(b) to show the defendant's intent and plan in transporting the minor. Id. at 1494 (also finding that the evidence could have been admitted under Rule 414).

Similarly, in United States v. Romero, 189 F.3d 576 (7th Cir. 1999), the defendant was charged with travel in interstate commerce to engage in illegal sexual activity with a minor under 18 U.S.C. § 2423(b). The court held that evidence that the defendant had tried to solicit other boys for sexual activity over the telephone was "highly probative" of the defendant's intent toward the complaining witness and showed that he had a "distinct sexual interest in young boys and had previously discussed acting on that interest." Id. at 488. See also United States v. Kieffer, 68 Fed.Appx. 726, 727-28 (7th Cir. 2003) (unpublished) (holding that evidence of previous attempt to engage in sexual activity with a minor properly admitted under Rule 404(b) in prosecution under 18 U.S.C. § 2423(b), noting that courts have "repeatedly held" that other acts may be introduced in specific intent crimes); United States v. Thomas, 893 F.2d 1066, 1071 (9th Cir. 1990) (holding that where the defendant argued that he believed the minor he molested and photographed was over 18, his past convictions for sexually molesting young girls were admissible to prove knowledge).

Evidence that the Defendant paid for sexual activity with Minor E and other minors during a trip to Cambodia in 2002 is highly probative of the Defendant's intent to engage in illicit sexual

conduct when he returned to Cambodia in November 2003, as required for a conviction on Count Ten of the Indictment. Images from the micro drives showing that the Defendant was repeatedly involved in the sexual exploitation of minors during the September to October 2003 trip to Cambodia is also crucial evidence of his state of mind at the time of the November 2003 trip to Asia.

Proof of the Defendant's knowledge and intent is also shown by evidence of his actions after returning to Asia in November 2003. In particular, the requisite showing of intent is supported by the images of an unidentified minor with what appears to be ejaculate on her back, taken on December 2, 2003. Testimony from Minor E regarding the Defendant's alleged attempts to purchase her younger sister for marriage is also relevant evidence of the Defendant's intent to target minors for sexual activity.

Additionally, the photographs of numerous minors from the Defendant's earlier and later trips, as well as Minor E's testimony that the Defendant requested to take her picture, are essential evidence of the Defendant's plan and intent to produce sexually explicit images, as required for conviction on Counts Six through Nine of the indictment. Evidence regarding these additional minors is crucial to the Government's ability to prove the Defendant's intent by showing that he repeatedly took sexually explicit images of young women and girls. Even if a jury does not make the inference that the Defendant was responsible for the contents of all of the images, the Defendant's use of a memory stick containing hundreds of images of child pornography demonstrates his interest in this type of material and thus his intent to engage in the alleged violations of Section 2251A.

In addition, although the charged violations of Section 2423(c) do not require proof of intent, it would be necessary for the Government to prove intent to engage in illicit sexual conduct with the

known minors for a conviction for an attempted violation of that statute.  Finally, to the extent that Defendant argues that he believed the girls to be 18 or older, the testimony of Minor E and the images of the unidentified minors is strong evidence disproving such a contention.  This evidence would show that there was no reasonable mistake of age in this case but that, instead, the Defendant actively solicited and exploited minor girls.

Where, as here, the defendant is charged with a specific intent crime, the balance in admitting 404(b) evidence of intent tips toward admissibility.  Robinson, 687 F.2d at 361.

(ii). Identity and Modus Operandi

A central issue in the Government's case is whether the Defendant took the photographs on the micro drives depicting the known victims.  To prove identity through extrinsic evidence, the Eleventh Circuit has established the following standard: "[T]he physical similarity must be such that it marks the offenses as the handiwork of the accused.  In other words, the evidence must demonstrate a modus operandi." United States v. Stubbins, 877 F.2d 42, 44 (11th Cir. 1989).  In Stubbins, the Court found sufficient physical similarity to constitute a modus operandi (and thus admit the other act evidence to prove identity) between two drug sales, the latter of which was the charged offense, simply because they both occurred at the same street address.  Id.

The use of evidence of uncharged acts to show identity and modus operandi has been approved by this and other circuits in child exploitation cases.  In United States v. Hersh, 297 F.3d 1233, 1254, n. 31 (11th Cir. 2002), for example, the court recognized that evidence of the defendant's uncharged sexual activity with minors was admissible under Rule 404(b) in a prosecution under 18 U.S.C. § 2423(b), to show state of mind and modus operandi, and to rebut an attack on witness credibility.  Similarly, the defendant in United States v. Dhingra, 371 F.3d 557 (9th Cir. 2004) was

17

charged with using the Internet to entice a minor to engage in illicit sexual activity under 18 U.S.C. § 2422(b). The Ninth Circuit held that evidence of the defendant's attempt to solicit sex from a seventeen year old over the Internet three years earlier was probative of the defendant's modus operandi and intent in contacting the minor in the charged case. Id. at 566-67. See also Romero, 189 F.3d at 588 (in prosecution under Section 2423(b), evidence of the defendant's uncharged attempts to entice other minors over the telephone admissible as modus operandi evidence to show his seduction techniques and intent); Kieffer, 68 Fed.Appx. at 727-28 (in prosecution under 18 U.S.C. § 2423(b), evidence of previous attempt to engage in sexual activity with a minor during interstate road trip properly admitted under Rule 404(b) to show modus operandi and intent).

The photographs of unknown victims stored on the Defendant's micro drives bear sufficient similarity to the photos of the known victims to be admissible as modus operandi evidence to prove identity. The images are distinctive in several respects, including that they were taken in Southeast Asia, often show multiple minors engaging in sexually explicit conduct in a single photograph, and share many of the same backgrounds as several photos of the known victims. This commonality alone satisfies the Stubbins test. Moreover, in each series of photos the minors are posed in a similar manner. The obvious similarity between the photos taken of the unknown victims and photos of the known victims suggests a common photographer.

Another avenue by which the Defendant's identity can be proven is matching the dates and locations on the photos with the Defendant's known travel itinerary. The more photos that are available for comparison, the more accurate the identification can be. The entirety of the stored photographic evidence closely corresponds with the times and places the Defendant traveled between September 16, 2003 and January 1, 2004. This presents strong circumstantial evidence that the

Defendant took the sexually explicit photographs of the known victims.

The testimony of Minor E also constitutes modus operandi evidence, because it shows that the Defendant engaged in sexual activity with multiple minors in Cambodia in 2002, and that the Defendant brought a camera and asked to take pictures. This evidence would not be offered to show bad character, but that the Defendant had a distinctive pattern of behavior which included sexual activity with multiple minors in a commercial setting in Cambodia.

### 2. Sufficient Evidence Exists to Allow the Jury to Find that the Defendant Committed the Extrinsic Acts

The Supreme Court has held that relevant extrinsic evidence that is probative of an issue other than the defendant's character "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." Huddleston v. United States, 485 U.S. 681, 685 (1988). In Huddleston, the Supreme Court explicitly rejected the argument that the trial court must determine in advance that the defendant committed the other act before allowing the jury to see the evidence, holding instead that evidence may be admissible if the jury could "reasonably conclude that the act occurred and that the defendant was the actor." Id. at 688.

In this case, there is abundant evidence to allow a jury to reasonably determine that the other acts occurred and that the Defendant was responsible. As to Minor E's testimony, the jury need only find Minor E credible to reasonably find that the Defendant engaged in sexual activity with her and other minors in 2002 and offered to marry her younger sister in 2004. As to the images on the micro drives, sufficient evidence also exists that the Defendant was aware of and responsible for all of the images on the micro drives for his camera. This is because the micro drives were under his control when the police seized them, the time-stamps on the images match the Defendant's travel itinerary,

19

he appears in numerous images, and the background of many images matches that of the hotel room in which he was arrested.

### 3.   The Probative Value of this Evidence Is Not Substantially Outweighed by Undue Prejudice

Relevant evidence that is otherwise admissible under Rule 404(b) may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of undue prejudice. See, e.g., LeCroy, 441 F.3d at 926.   The determination of whether the probative value of the evidence offered is substantially outweighed by the danger of unfair prejudice is determined by an "assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Jernigan, 341 F.3d at 1282 (internal citations omitted).   See also United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) (noting that a "similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense.").   To the extent that the evidence offered by the Government in this case is even extrinsic to the offense, it is crucial to meeting the Government's burden of proof, extremely similar to the charged offenses, and not remote in time.

The Eleventh Circuit has cautioned that exclusion under Rule 403 is an "extraordinary remedy" and must be used sparingly.   United States v. King, 713 F.2d 627, 631 (11th cir. 1983).   In determining whether probative evidence should be excluded, courts must recognize that "in a criminal trial relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." Id. (emphasis in original) (internal citations omitted).   This caution is particularly important in child exploitation cases, which

inherently involve evidence that can be upsetting to the average juror. The admission of such evidence does not create *unfair* prejudice, however, where the evidence has high probative value.

For example, in <u>United States v. Cross</u>, 928 F.2d 1030, 1047 (11th Cir. 1991), defendants charged with conspiracy to produce child pornography under 18 U.S.C. § 2251 objected to the admission of letters that post-dated the charged conspiracy, in which the defendants discussed their sexual interest in children. In finding that the correspondence did not create an unacceptable risk that the jury convicted the defendants simply because they were pedophiles, the court in <u>Cross</u> noted that the "'major function' of Rule 403 'is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" 928 F.2d at 1048, quoting <u>United States v. Sawyer</u>, 799 F.2d 1494, 1506 (11th Cir. 1986). In contrast, the court in <u>Cross</u> found that the evidence admitted had "considerable probative value in proving [the defendants'] intent to create and market child pornography." <u>Id</u>. <u>See also Rojas</u>, 145 Fed.Appx. at 650 (evidence of prior attempted sexual enticement of a minor properly admitted where evidence was needed by the prosecution to show the defendant's intent to have sexual contact with minors); <u>Brietweiser</u>, 357 F.3d at 1254 (evidence of previous sexual acts with minors admitted to show motive, intent, knowledge, plan and preparation, and lack of mistake was not more prejudicial than probative). As noted by the Ninth Circuit Court of Appeals,"[E]vidence relevant to a defendant's motive 'is not rendered inadmissible because it is of a highly prejudicial nature . . . The best evidence often is.'" <u>United States v. Parker</u>, 549 F.2d 1217, 1222 (9th Cir. 1977) (internal citations omitted). <u>See also United States v. Dornhofer</u>, 859 F.2d 1195 (4th Cir. 1988) (finding that admission of pictures of nude children, novels dealing with incest, and child erotica magazines in child pornography trial not unduly prejudicial, noting that the exclusion of relevant evidence requires "a

genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." Id. (internal quotations and citations excluded).

Considering the question of temporal remoteness, there can be no claim that the images on the micro drives are remote in time from the charged offenses in this case. And while the testimony of Minor E primarily concerns acts that occurred about a year before the charged activity, the Eleventh Circuit has approved of Rule 404(b) evidence of events that were dramatically more remote in time than a year. See, e.g., Le Croy, 441 F.3d at 926 (finding that ten years not too remote and noting that Eleventh Circuit has approved of Rule 404(b) evidence concerning events that occurred fifteen years before charged offense); United States v. Pessefall, 27 F.3d 511, 516 (11th Cir. 1994) (finding that evidence showing that a defendant intentionally engaged in drug trafficking eight years prior to the charged trafficking offense was not too remote). See also Meachum, 115 F.3d at 1494 (admitting evidence of molestation that occurred thirty years prior to charged offense, noting that "[s]imilarity of prior acts to the charged offense may outweigh concerns of remoteness in time"); United States v. Hadley, 918 F.2d 848, 851 (9th Cir. 1990) (evidence of prior instances of sexual molestation were properly admitted in a sexual abuse case, even where some of the instances had occurred more than ten years earlier).

The probative value of the complete set of images from the micro drives and the testimony of Minor E is extraordinarily high. The images show repeated sexual exploitation of minors through the creation of child pornography during the exact same time period as the charged offenses. The images of additional minors are also strikingly similar to those of the known victims. The images demonstrate Defendant's intent, knowledge, plan, identity, and modus operandi. The testimony of

22

Minor E similarly involves conduct that is extremely similar to the charged offenses. The evidence offered by the Government shows the repeated sexual exploitation of multiple minors during the Defendant's trips to Asia and is highly probative of his intent, knowledge, plan, identity and modus operandi.

Any prejudice that might result from admission of this evidence can be mitigated with a limiting instruction. See, e.g., Jernigan, 341 F.3d at 1282 (any unfair prejudice of 404(b) evidence mitigated by limiting instruction). The probative value of the evidence offered is not substantially outweighed by the danger of unfair prejudice. The evidence should be admitted.

### C.   The Testimony of Minor E is Admissible under Rule 413

The testimony of Minor E concerning the Defendant's alleged sexual exploitation of herself and other minors in 2002 is also admissible for any purpose under Fed.R.Evid. 413.[5]   Rule 413 provides that, "[i]n a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Subdivision (d) of the rule defines the an "offense of sexual assault" as a crime under federal or state law that involved, in relevant part, "any conduct proscribed by chapter 109A of the federal criminal code." Rule 413 applies in the instant case because the Defendant's alleged sexual exploitation of Minor E in 2002 and several of the charged offenses involved conduct proscribed by chapter 109A, specifically 18 U.S.C. § 2243(a) (prohibiting sexual acts with a person less than sixteen years old).

Rules 413 and Rule 414 of the Federal Rules of Evidence establish special standards for the

---

[5]   Although not directly applicable because Minor E was fourteen years of age at the time of the alleged sexual exploitation by the Defendant, Fed.R.Evid. 414 allows for admission of evidence of similar crimes in child molestation cases where the child is under the age of 14.

admission of evidence of uncharged offenses in sexual assault and child molestation cases.  In contrast to Rule 404(b), which only allows uncharged act evidence to be admitted on non-character theories of relevance, Rules 413 and 414 allow such evidence to be admitted and considered for its bearing "on any matter to which it is relevant."  Hence, evidence of other sexual offenses may be admitted under Rules 413 and 414 to show a propensity of a defendant to commit crimes like that charged.  See 140 Cong. Rec. H8991; United States v. Mound, 149 F.3d 799, 802 (8th Cir. 1998) (rules' intended effect is to supersede Rule 404(b)'s restriction); United States v. Larson, 112 F.3d 600, 604 (2d Cir. 1997) (Rule 414 allows evidence of propensity); United States v. Wright, 53 M. J. 476, 478, 480, 483 (Ct. App. Armed Forces 2000) (upholding admission of other sexual misconduct under Rule 413 to show propensity).

Evidence that is relevant under Rule 413 is also subject to Fed.R.Evid. 403.  However, Rule 403 must be applied to allow Rule 413 its intended effect.  See Larson, 112 F.3d at 604; Meacham, 115 F.3d at 1492 ("clearly under Rule 414 the courts are to 'liberally' admit evidence of prior uncharged sex offenses"); United States v. Enjady, 134 F.3d 1427, 1431, 1433 (10th Cir. 1998) ("Rule 413's presumption in favor of admission" is constitutional and "Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence 'normally' should be admitted").  Rules 413 and 414 alter the practical operation of Rule 403 because they do not restrict the purposes for which evidence within their scope can be admitted.

Prejudice that would ordinarily accompany the type of evidence covered by Rule 413 is not sufficient to exclude evidence that otherwise falls within the rule.  See United States v. LeCompte, 131 F.3d 767, 770 (8th Cir.1997); Mound, 149 F.3d at 802 (applying underlying legislative judgment that probative value of Rule 413 evidence "is normally not outweighed by any risk of prejudice or

other adverse effects"). Rather, exclusion must be based on factors that distinguish a case from the general type of cases within the scope of Rules 413-14 and establish an unusual likelihood of prejudice that substantially outweighs the probative value of the evidence.

In United States v. Julian, 427 F.3d 471 (7th Cir. 2005), the defendant was charged under 18 U.S.C. § 2423(b) for traveling and arranging for others to travel to Mexico to have sex with minors. The court in Julian upheld the admission of evidence regarding the defendant's sexual exploitation of his minor stepson twelve years prior to the charged events, finding that under Rule 413 the jury was permitted to consider the evidence "as proof of his propensity to commit the type of crimes charged in the indictment." Id. at 485. Similarly, in United States v. Blazek, 431 F.3d 1104, 1108-09 (8th Cir. 2005), the court admitted evidence of prior sexual exploitation of a minor under Rule 413 in a case charged under Section 2423(b), and emphasized that Rule 413 does not require that a defendant be charged with a violation of chapter 109A but "only that the instant offense involve conduct proscribed by chapter 109A."

In the instant case, evidence that the Defendant engaged in sex acts with Minor E and other minors in Cambodia in 2002 is admissible under Rule 413 to show the Defendant's propensity to engage in illegal commercial sexual activity with minors while overseas. No limiting instruction should even be required with respect to the testimony of Minor E. While such propensity evidence is thus admissible in this case under Rule 413, the Government instead seeks to offer this evidence for the same limited purposes as those allowed by Rule 404(b), including intent, plan and absence of mistake.

## III.   CONCLUSION

The photographic evidence offered by the Government is intrinsic to the offense and is

necessary to tell a coherent story of the Defendant's activities during the time period alleged in the Indictment. In the alternative, the photographic evidence, as well as the testimony of Minor E, is admissible to show the Defendant's intent, knowledge, plan, identity and modus operandi. The evidence offered by the Government is highly probative, and its probative value is not substantially outweighed by the danger of unfair prejudice. The "extraordinary remedy" of exclusion of relevant evidence is not appropriate in this case, and would unrealistically sanitize the events that are the subject of the Indictment. Accordingly, for all of the reasons stated above, the United States respectfully requests that the complete contents of the micro drives and testimony of Minor E be admitted in evidence.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By: _____

WENDY WALDRON
Trial Attorney, U.S. Department of Justice
1400 New York Ave. N.W.
Washington, D.C. 20005
Telephone: (202) 514-5780
Facsimile: (202) 514-1793

By: _____

ERIC MORALES
Assistant United States Attorney
Court ID Number A5500886
99 NE 4th Street, Suite 400
Miami, FL 33132-2111
Tel: 305-961-9255
Fax: 305-530-7976

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was faxed this 18th day of August, 2006, to Jeffrey E. Feiler at 305-669-8198, and mailed this 21st day of August 2006 to:

Jeffrey E. Feiler
7685 SW 104 Street
Suite 200
Miami, Florida 33156

ASSISTANT U.S. ATTORNEY

27