UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20778-CR-JORDAN/TORRES

UNITED STATES OF AMERICA,

vs.

KENT FRANK,

    Defendant.
_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

The United States of America, by and through R. Alexander Acosta, United States Attorney for the Southern District of Florida, Eric Morales, Assistant United States Attorney, and Wendy Waldron, Trial Attorney for the United States Department of Justice, respectfully submits this response to the Defendant Kent Frank's Motion to Suppress Statements.

There is no authority for the suppression of statements made to foreign law enforcement under circumstances such as those involved in the instant case. The United States did not request, conduct or direct the interview in which the Defendant made the statements that he now seeks to suppress. Given the well-settled rule that Fifth Amendment rights and exclusionary rules are generally inapplicable to foreign investigations, the Defendant's motion to suppress should be denied. In support of this position, the United States offers the following factual and legal analysis of the case.



I.      **Statement of Facts.**

There does not appear to be significant dispute regarding the factual circumstances surrounding Defendant's statements to Cambodian police. Defendant was arrested by the Cambodian National Police ("CNP") on January 1, 2004 in Phnom Penh, Cambodia. The CNP also seized several items from Defendant's hotel room.[1] The arrest was for suspected violations of Cambodia's debauchery statute in connection with alleged sexual activity with four minor girls. On January 2, 2004, Gary Phillips, Assistant Immigration and Customs Attache in Bangkok, Thailand, learned about Defendant's arrest by the CNP. As described in the Affidavit of Gary Phillips, attached hereto as Exhibit A, prior to January 2, 2004, neither Gary Phillips nor any other United States official or agent had any involvement in, or knowledge of, the CNP's investigation of Defendant.

On January 2, 2004, upon being informed of the arrest of a United States citizen, Agent Phillips and several persons from the United States embassy met with the CNP. At approximately 0900 hours on January 2, 2004, Agent Phillips began an initial review of evidence seized from Defendant's hotel room. The U.S. investigation had just begun. No decision had been made by the Agents to pursue a case against Defendant. The U.S. agents were just familiarizing themselves with the physical evidence and the events of the previous day.

At approximately 0950 hours, the CNP began the interview with Defendant at issue in this motion. No U.S. representative or agent was present during this CNP interview of Defendant.[2]

---

[1] Some of these items were the subject of Defendant's Motion to Suppress Evidence.

[2] Defendant does not allege presence or participation by U.S. law enforcement in his CNP interview. Motion to Suppress Statements at 3.

Furthermore, as stated by Agent Phillips in the attached affidavit, neither he nor any other U.S. Government employee directed or requested that the CNP interview Defendant. The CNP interview of Defendant was part of their investigation of possible violations of Cambodian law.

On January 3, 2004, Agent Phillips visited Defendant in Cambodian custody. Agent Phillips identified himself to Defendant as a U.S. law enforcement agent. Agent Phillips asked Defendant to provide some biographical information, which he did. Agent Phillips gave Defendant <u>Miranda</u> warnings and attempted to conduct an interview. However, the interview was cut short when Defendant was summoned by a Cambodian Judge. <u>See</u> Affidavit of Gary Phillips, attached hereto as Exhibit A.

During the time of Defendant's arrest and the statements in question, the U.S. and Cambodian Governments were involved in both informal and formal cooperation in a number of law enforcement areas, including sex tourism and trafficking. However, there was no coordination, input, or joint investigation on Defendant's case. The statements Defendant seeks to suppress were made as part of the Cambodian authorities own independent investigation of Defendant's violation of Cambodian laws, and were independent of any U.S. investigation.

**II.    Argument.**

**A.    The lack of <u>Miranda</u> or its equivalent by Cambodian authorities.**

It is well-settled that when foreign officials do not provide <u>Miranda</u> warnings or its functional equivalent, it does not render a defendant's subsequent statements involuntary or inadmissible in a United States court. <u>See</u>  <u>Kilday</u>, 481 F.2d at 656 ; <u>Heller</u>, 625 F.2d at 599; <u>United States v. Chavarria</u>, 443 F.2d 904, 905 (9th Cir. 1971). Even in the domestic context, the Eleventh Circuit has held that a confession may be voluntary even where it was obtained in violation of <u>Miranda</u> because

3

police ignored the defendant's request to "cut off" questioning. Martin v. Wainwright, 770 F.2d 918, 928 (11th Cir. 1985), modified on other grounds, 781 F.2d 185 (11th Cir. 1986)(finding confession voluntary despite questioning that lasted five hours, false information and legal advice, and promises of psychiatric care, where defendant did not refuse to answer questions). Therefore, the fact that Defendant was not given Miranda warnings by the CNP investigators, which Defendant mentions in his Motion, is of no moment to the determination of admissibility of Defendant's statements. See Motion at 4-5, 6-7. Nonetheless, the Government does not intend to introduce anything purporting to be a "written statement" of Defendant from January 2, 2004. [3] The written account of the interview may be used to refresh the recollection of witnesses or, where appropriate, as a recorded recollection under Fed.R.Evid. 803(5).[4] Therefore, Defendant's argument relating to the inadmissibility of the document containing the actual written statement will not be addressed.

### B. Evidence obtained by foreign law enforcement agents is generally applicable in U.S. courts, with only two narrow exceptions that do not apply in this case.

The justification and prime purpose of the exclusionary rule is to deter unlawful police conduct. See Colorado v. Connelly, 479 U.S. 157, 166 (1986). Courts recognize that the exclusionary rule does not function as a useful deterrent of activity by foreign governments. See United States v. Kilday, 481 F.2d 655, 656 (5th Cir. 1973); United States v. Rosenthal, 793 F.2d 1214, 1230 (11th Cir. 1986)(foreign police conduct will not be deterred by punitively excluding evidence in American courts). Thus, evidence obtained by foreign police officers from interviews

---

[3] The Government does intend to offer the testimony of persons who were present during Defendant's statements to the CNP to testify as to what Defendant said during the interview.

[4] To the extent that the written reports might be admitted in evidence, the Government would have no objection to deleting the Defendant's signature from these documents.

4

or searches carried out in their own countries is generally admissible in American courts, regardless of whether the search complied with the Fourth or Fifth Amendment and even when American officials were present and cooperated in some degree. United States v. Heller, 625 F.2d 594 (5th Cir. 1980); Kilday, 481 F.2d 655; Birdsell v. United States, 346 F.2d 775, 782 (5th Cir. 1965), cert. denied, 382 U.S. 963 (1965); United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994).[5] This rule applies regardless of whether the persons arrested are American citizens. Rosenthal, 793 F.2d at 1230.

There are two rarely-used exceptions to the general rule admitting evidence and statements obtained by foreign governments, neither of which apply in the instant case. The first exception to admissibility is where the foreign officials engage in action that is so extreme that it "shocks the judicial conscience" or where statements are coerced. See Heller, 625 F.2d at 599; Kilday, 481 F.2d at 656; see also United States v. Welch, 455 F.2d 211, 213 (2nd Cir. 1972). The second exception is where United Sates law enforcement officials substantially participated in the search or interrogation, or the foreign officials conducting the search or interrogation were actually acting as agents for their United States Government (sometimes referred to as the "joint venture" doctrine).[6] See Heller, 625 F.2d at 599; Morrow, 537 F.2d at 139; Rosenthal, 793 F.2d at 1230-31; Behety, 32

---

[5] The Eleventh Circuit is bound by Fifth Circuit decisions handed down prior to the close of business on September 30, 1981. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981).

[6] No case specifically defines the term joint venture. Indeed, the Tenth Circuit has rejected the term as unreliable. United States v. Mundt, 508 F.2d 904 (10th Cir. 1974). Many of the foreign search cases use terms taken from the federal-state search cases and define a joint venture as only one involving "substantial American participation." See, e.g. Stonehill v. United States, 405 F.2d 738 (9th Cir. 1968); United States v. Shurman, 219 F.2d 282 (5th Cir. 1955).

5

F.3d at 510; Stonehill v. United States, 405 F.2d 738, 743 (9th Cir. 1968), cert. denied, 395 U.S. 960 (1969). Defendant urges both these grounds. However, neither of exceptions to the admissibility of statements obtained by foreign officials applies in this case, even under the facts as alleged by Defendant.

### C. Defendant's statements were not made under conditions that shock the conscience or and his confession was not involuntary.

Defendant has not suggested in his motion any conduct surrounding his interview with the CNP that would "shock the judicial conscience" and thus permit suppression of evidence gathered by foreign law enforcement. See, e.g., Heller, 625 F.2d at 599 (recognizing that evidence may be excluded where conduct of foreign officials shocks the conscience of American Court). There is similarly no evidence suggesting that Defendant's statements were coerced.[7] The only fact of this kind that Defendant alleges that CNP officials told him that he *had to* speak with to them. See Motion at 4. Even if this assertion were true, which the Government is not conceding, it would not constitute the kind of coercion sufficient to render Defendant's statements involuntary in the due process context. It falls far short of prolonged interrogation, false promises, threats, physical abuse, deprivation of sleep, or any similar tactic.

---

[7]To determine whether a confession given to a state actor subject to the Constitutional mandates is voluntary, courts must assess "the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." Schneckloth v.Bustamonte, 412 U.S. 218, 226 (1973). The inquiry focuses on whether there has been any "police overreaching." Colorado v. Connelly, 479 U.S. 157, 163, (1986). Factors to be considered include the education, intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and if physical punishment such as the deprivation of food or sleep was used. Schneckloth, 412 U.S. at 226 (citations omitted); Hubbard v. Haley, 317 F.3d 1245, 1253 (11th Cri. 2003).

6

The Supreme Court's decision in Colorado v. Connelly, supra, may have removed the requirement of voluntariness in statements made to foreign law enforcement. In Connelly, the Supreme Court reiterated that pressures emanating from a source other than a state actor subject to the constraints of the Constitution can not render a confession involuntary.[8] Id. at 165. In reaching this holding, the Court stressed that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause" and also noted that the "Fifth Amendment privilege [against self incrimination] is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" (quoting Oregon v. Elstad, 470 U.S. 298, 305 (1985)). At least one circuit court has indicated that because Connelly requires coercive activity by persons subject to constitutional constraints, the voluntariness requirement may not apply to statements taken by foreign law enforcement. See United States v. Wolf, 813 F.2d 970, 972 n.3 (9th Cir. 1987)(finding nevertheless that statements were voluntary and admission did not violate due process or self-incrimination clauses of Fifth Amendment).

In this case, the CNP was not subject to the constraints of the Constitution. As such, like a private party, even the "most outrageous conduct" by the CNP would not render the statements inadmissible under the Due Process Claus. Colorado v. Connelly, 479 U.S. at 166 (citations omitted). Nonetheless, the conduct of the CNP, even as alleged by Defendant, can hardly be characterized as outrageous. Defendant has not alleged the CNP used the kind of coercive tactics required before a defendant's statements may be suppressed as involuntary under the due process clause. Defendant does not allege that he was threatened, subjected to prolonged interrogation,

---

[8]Lego v. Twomey, 404 U.S. 477 (1972), cited by Defendant is not contrary with this because it was decided in the context of a state actor subject to the Constitution.

7

deprived of sleep or sustenance, or physically abused in any way. The bare allegation by Defendant that the CNP officers told him that he had to talk to them is not the sort of conduct that renders the statements inadmissible. Even if Defendant was told that he had to talk to the Cambodian police, a fact the United States is not conceding, he does not allege that he was threatened or otherwise intimidated by the CNP. See Leon v. Wainwright, 734 F.2d 770, 772 (11th Cir. 1984) (the test for determining voluntariness is whether the statement was extracted by threats or violence, direct or implied promises, or improper influence). Defendant's assertions do not even begin to demonstrate the type of shocking coercive police tactics that would justify suppressing Defendant's statements which were given to foreign officials.

### D. United States Agents did not participate in the CNP's interview and there was no joint venture or agency.

Controlling precedent in the Eleventh Circuit and elsewhere sets an extremely high threshold for a finding of substantial participation in a foreign investigation. For example, in United States v. Hawkins, 661 F.2d 436, 456 (5th Cir. Unit B 1981), DEA agents notified Panamanian officials that a suspected smuggling plane had crashed in Panama. The Fifth Circuit upheld the admission of evidence seized from the plane by Panamanian officials and stated, "[t]here is no indication the DEA agents persuaded the Panamanian authorities to conduct the search on their behalf in an attempt to evade the strictures of the fourth amendment." The facts at bar are even further removed from those necessary to find a joint venture existed between Cambodian and United States authorities or that the Cambodians were acting as agents of the United States than those present in Hawkins. The United States did not notify Cambodians of Defendant's activities, and there was no coordination with, or input into, the Cambodian investigation by United States agents.

8

Another case that illustrates how far Defendant's allegations are from meeting the threshold for exclusion of his statements is <u>United States v. Kilday</u>, 481 F.2d 655 (5th Cir. 1973). In <u>Kilday</u>, like in the present case, the issue was the admissibility of statements made by a U.S. citizen while in the custody of foreign (Argentine) officials who did not provide <u>Miranda</u> warnings. <u>Id.</u> at 656. The Court held that the protections of the Fifth Amendment did not apply even though the defendant was arrested in connection with a bank robbery that occurred in Florida, questioned by an Interpol agent rather than Argentine police, and an American consular official was present and acted as an interpreter during the interrogation. <u>Id</u>. In reaching this holding, the court in <u>Kilday</u> noted that the "United States Constitution cannot compel such specific, affirmative action [as <u>Miranda</u> warnings] by foreign sovereigns." <u>Id</u>. The court also found that the statements in question were not coerced. <u>Id</u>.

In the parallel context of whether the Fourth Amendment applies to the seizure of evidence by foreign police, the Eleventh Circuit has refused to find substantial participation in cases involving far greater cooperation than that involved in the instant case. For instance, in <u>Rosenthal</u>, the Eleventh Circuit found no joint venture where United States agents helped plan a raid of the defendant's residence in Colombia, were present during the raid and arrest, and received all of the evidence obtained during the raid for use in the defendant's prosecution in the United States. 793 F.2d at 1231. <u>See also</u> <u>Behety</u>, 32 F.3d at 510-511 (no joint venture or Fourth Amendment violation when DEA informed Guatemalans that a vessel with cocaine was coming to their country from Florida, DEA agents were present during the search, and the defendant and evidence were sent to Miami for prosecution); <u>Morrow</u>, 537 F.2d at 140 (FBI tip to Canadian authorities of a United States citizen in Canada dealing in counterfeit securities insufficient to trigger Fourth Amendment

9

protections even though all evidence was turned over to FBI for prosecution in United States); Birdsell, 346 F.2d at 782 (Fourth Amendment not applicable to arrest in Mexico that was the result of a tip by United States and where a deputy sheriff from Texas assisted Mexican police as s translator).

The Eleventh Circuit is not alone in setting an extremely high bar for substantial participation. See, e.g., Welch, 455 F.2d at 212-213 (mere presence of F.B.I. agent did not support finding that Bahamian police were acting as agents of U.S. and statements made without Miranda warnings admissible). Other circuits also set a high bar. See, United States v. Yousef, 327 F.3d 56, 146 (2nd Cir. 2003)(request by U.S. to Jordanian government to apprehend defendant and fact that defendant heard English spoken during interrogation not sufficient to constitute substantial participation); See also, Stonehill, 405 F.2d at 743-745 (no joint venture even though U.S. officials were present during the planning of a raid, present during the raid itself, and obtained all of the evidence from the raid the next day). Other circuit courts also have declined to find substantial participation in cases where the facts were stronger than those alleged by Defendant. See Pfeifer v. United States Bureau of Prisons, 615 F.2d 873, 877 (9th Cir. 1980)(combination of treaty encouraging joint drug investigations and presence of American DEA agent with visible firearm in his jacket during interrogation by Mexican officials not sufficient to invoke joint venture doctrine).

The extremely rare cases where U.S. participation has been deemed enough to constitute a joint venture involve investigations essentially initiated and carried out by the United States in a foreign country. See, e.g., United States v. Emery, 591 F.2d 1266, 1267 (9th Cir. 1978)(finding joint venture where American DEA agent coordinated surveillance of defendant with Mexican police, placed undercover U.S. agent in criminal operation, and were present during search and

interrogation). Nothing even resembling such circumstances exists in this case.

Defendant's entire discussion of cooperation between the U.S. and Cambodian Governments does nothing to meet the extremely high threshold showing that must be made before constitutional protections apply to foreign law enforcement activity. The United States Government enjoys close cooperation with numerous foreign governments in specific areas of law enforcement activity. Many of these cooperative relationships include specific obligations through treaty or agreement. Simple cooperation between the U.S. Government and a foreign government, even in a specific area of law enforcement, does not meet this threshold.

Defendant cites no authority, and none exists, that holds mere agreements to cooperate and share information transform foreign law enforcement authorities into agents of the U.S. and all foreign activity in that area into a "joint venture." On the contrary, controlling authority requires substantial participation by U.S. agents in foreign actions on that particular case. See Kilday, 481 F.2d at 656; Heller, 625 F.2d at 600-01; Behety, 32 F.3d at 510-511; See also United States v. Gecas, 120 F.3d 1419, 1433-34 (11th Cir. 1997)(noting that cooperation with foreign governments, including sharing of information on specific cases, does not transform foreign governments into agents of the United States and warning against "constraining the law enforcement activities of foreign countries where the privilege against self-incrimination does not exist."); Pfeifer, 615 F.2d at 877.

In the present case, Defendant was arrested by the CNP without any prior knowledge of the U.S. Government. Defendant was then interviewed by the CNP regarding possible violations of Cambodian law. Although U.S. law enforcement were informed after Defendant was arrested and were in the building reviewing evidence while the CNP interview was proceeding in a separate room, they did not suggest, direct, request, or in any way participate in the CNP's interview of Defendant.

Agent Phillips did not interview Defendant until the day after the CNP interview. That Cambodia's investigation and activities were independent of the U.S. investigation from the beginning is borne out by the fact that Agent Phillips' interview of Defendant was cut short because the Cambodian Judge summoned Defendant in connection with ongoing Cambodian criminal legal proceedings.

There is no evidence that the United States Government informed the CNP of Defendant's presence in Cambodia, requested that Defendant be investigated or arrested on January 1, 2004, or had any input into the Cambodian interview of Defendant. Even if Defendant's arrest were pursuant to a request by the United States, which it was not, such a request would be legally insufficient for a finding of substantial participation. See Kilday, 481 F.2d at 656; Heller, 625 F.2d at 600-01; Morrow, 537 F.2d at 140; Birdsell, 346 F.2d at 782. Similarly, although the Defendant does not explicitly assert that any U.S. agent or official was present during his interview with the CNP,[9] the case law is clear that even presence of U.S. personnel does not transform foreign law enforcement activity into a joint venture. See Kilday, 481 F.2d at 656; Behety, 32 F.3d at 510-511; Rosenthal, 793 F.2d at 1231; Welch, 455 F.2d at 212-213; Stonehill, 405 F.2d at 743-745.

The only applicable authority cited by Defendant, United States v. Heller, 625 F.2d 594 (5th Cir. 1980), does not help his cause. Quite the opposite, Heller demonstrates that marginal activity by United States officials, such as that present in this case, is insufficient to constitute substantial participation in foreign law enforcement activity required to for the exclusionary rule to spring into action. The court in Heller held that the protections of the Fourth and Fifth Amendments did not apply to evidence seized or statements taken by British authorities, which were then used in a United States federal prosecution. Id. at 600-01.

---

[9] None was in fact present.

12

The facts in this case do not even rise to the level present in Heller, where the exclusionary rule did not apply. In Heller, the U.S. Secret Service informed British officials that a person carrying counterfeit U.S. currency was in London. Id. at 596. Based on this information, British authorities detained the defendant at a London airport and seized counterfeit currency. Id. During the time of his custodial questioning by British authorities, an American Secret Service agent separately interviewed the defendant.[10] Id. at 600. Despite recognizing that the defendant would not have been arrested if not for the tip from a U.S. official, the court in Heller described the participation of American law enforcement as "peripheral at most." The court based this conclusion on the fact that the defendant was initially charged with violations of British law, the American agent had to obtain permission from the British authorities to interview the defendant, and the interview was only for a limited amount of time. Id. While the court in Heller noted that American and British officers did not exchange information about their separate interrogations of the defendant, the statements and evidence seized by the British authorities were turned over to the U.S. and used in the defendant's prosecution. Id. at 599. Heller indicates that the possibility of foreign charges makes it less likely that a joint venture will be found. Cambodia did bring charges against Defendant.

The factual circumstances surrounding Defendant's statements to the CNP simply do not support a finding of substantial participation or that the CNP were acting as agents of the United States.

---

[10] Unlike British authorities, the American agent did give the defendant Miranda warnings. Id. at 600, n. 7.

13

### III. Conclusion.

Therefore, in accordance with well-settled Eleventh Circuit and Supreme Court case law, the United States respectfully requests that Defendant's motion be denied.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By: _____
WENDY WALDRON
Trial Attorney, U.S. Department of Justice
1400 New York Ave. N.W.
Washington, D.C. 20005
Telephone: (202) 514-5780
Facsimile: (202) 514-1793

By: _____
ERIC MORALES
Assistant United States Attorney
Court ID Number
99 NE 4th Street, Suite 400
Miami, FL  33132-2111
Tel: 305-961-9255
Fax: 305-530-7976

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was faxed and mailed this 20th, day of August, 2006, to:

Jeffrey E. Feiler
7685 SW 104 Street
Suite 200
Miami, Florida 33156
305-669-8198

*[signature]*
ASSISTANT U.S. ATTORNEY

EXHIBIT A

## AFFIDAVIT

I, Gary J. Phillips, being duly sworn, depose and state as follows:

1. I am an Assistant ICE Attache ("AIA") with the Bureau of Immigration and Customs Enforcement. I am currently assigned to a post in Bangkok, Thailand, and am the Operation Supervisor for Supervisory Special Agents and Foreign Service Nationals in Southeast Asia with respect to criminal investigations occurring within host countries (Thailand, Burma, Vietnam, Laos and Cambodia) in which American citizens are involved or which involve American interests. I have held this position since May 2002. I have participated in the United States investigation and indictment of Kent FRANK.

2. This affidavit is based upon information I have learned from members of the Cambodian National Police, as well as from special agents and foreign nationals working on behalf of the United States.

3. On January 2, 2004, the Cambodian National Police (CNP) informed United States Embassy Personnel in Cambodia that an American citizen, identified as Kent FRANK, was arrested in Phnom Penh, Cambodia for sexual exploitation against children. The CNP alleged that FRANK sexually abused four Vietnamese girls aged 12-15 years. This information was immediately relayed to me.

4. After learning of the arrest of FRANK, I and other members of my United States law enforcement team went to the CNP station and met CNP Major Meng Say at approximately 0900 on January 2, 2004. Major Say informed me that the CNP had obtained authorization to search a hotel room on January 1, 2004. FRANK was found and detained in the room. Evidence was also seized evidence from the room.

5. Following my meeting with Major Say on January 2, 2004, I began an initial

1

review of the evidence collected by the CNP in connection with their investigation of FRANK. While I was reviewing the evidence, the CNP was interviewing FRANK in a different room. Neither nor any other United States agent, official, or person working on behalf of the United States requested, directed, or participated, in the CNP's interview of FRANK on January 2, 2004.

6. To the best of my knowledge, any and all United States involvement in the FRANK investigation, by United States officials, or persons working on behalf of the United States, began on January 2, 2004.

7. As of January 2, 2004, the Cambodian Government was actively investigating FRANK for possible violations of Cambodian law. A decision as to whether charges would be brought against FRANK under U.S. law had not been made.

8 On January 3, 2004, I and other members of United States law enforcement returned to the local police station where FRANK was detained. At that time, we met with FRANK. At the initiation of this meeting with FRANK, I informed FRANK that and my colleagues were representatives from the U.S. Embassy and that I was a U.S. law enforcement agent. I asked FRANK to provide biographical information, and he complied. I also told FRANK that, as an American citizen, he was still entitled to the protections of his <u>Miranda</u> and civil rights and they would not be violated. My meeting

with FRANK on January 3, 2004 was cut short when he was summoned by a Cambodian Judge.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Gary J. Phillips
Assistant ICE Attache

Subscribed to and sworn before me
this 24 day of August, 2006.